JOHN A. TEN EYCK, Executor, v. JULIAN H. SLEEPER.[1]

July 7, 1896.

Nos. 10,032—(164).

**Lease—Agreement to Reduce Rent—Consideration.**

On February 26, 1890, E. leased to S. for the term of ten years an hotel situate in the city of St. Paul, at a rental of $500 per month. S. occupied the hotel until about October 12, 1893, when, by reason of the great depression in the hotel business where said hotel was located, he became insolvent and financially unable to pay the accruing rent, and for such reason was about to abandon the premises, and leave them vacant, whereupon the parties executed a written modification of the lease upon the back thereof, whereby it was agreed that the rent should be reduced to $350 per month from May 1, 1893, to May 1, 1897, and that E. should make certain repairs on the hotel property necessary to protect it, as asked for by S.; and thereupon S. agreed to use and continue to occupy the premises for hotel purposes, which he did until February, 1895, when he became insolvent and unable to continue the hotel business any longer. By the terms of the original lease,

1 Reported in 67 N. W. 1026.

S. was not bound to use or occupy the property for hotel or any other purpose. S. paid the rental of $350 per month until February, 1895, amounting to nearly $6,000, and receipts were given in full payment and settlement of rent to February, 1895. Upon an action brought by E. to recover the full rental of $500 per month, *held*, that the written modification of the lease rested upon a sufficient consideration.

Action in the district court for Ramsey county for the recovery of rent at the rate of $500 per month as stipulated in a lease. The answer set up a subsequent written agreement modifying the terms of the lease, whereby the rent was reduced to $350 a month. The case was tried before Egan, J., whose findings of fact are substantially included in the statement of the case contained in the opinion, and who found as conclusions of law that the agreement was made on sufficient consideration and that plaintiff was entitled to judgment for the rent due thereunder, at the rate of $350 a month, amounting to $1,806.15. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Briggs & Countryman*, for appellant.

*W. J. Romans*, for respondent.

BUCK, J. This is an action upon a written lease of an hotel to recover the agreed rental. The lease was made between the defendant, Sleeper, as lessee, and John A. Ten Eyck, Sr., since deceased, as lessor, dated February 26, 1890, and was so made to run for a term of ten years from May 1, 1890, at a monthly rental of $500. The lessee took possession under the lease, and remained in possession until March, 1895, when he made an assignment for the benefit of his creditors. In 1891 the lessor, Ten Eyck, died, and this plaintiff qualified as his executor. In October, 1893, the defendant complained to the executor of the depression in business, and declared that he was unable to pay the agreed rental. The property leased is what is known as the "Sherman House," used for hotel purposes, and situate in the city of St. Paul. The lease provided that the lessee should keep the premises in good repair during the entire term. Soon after October 1, 1893, he refused to pay further rental, and refused to continue to occupy the premises under the lease, and notified the plaintiff that he would pay no more rent under or according to its terms, and would vacate the premises. The parties thereupon made the follow-

ing agreement, which was written by the executor upon the back of the lease, as follows:

"In consequence of the general depression of the times, the terms of the within lease are hereby modified so as to reduce the rent from October 1st, 1893, to May 1st, 1897, to three hundred and fifty dollars per month, and after May 1st, 1897, the original terms of the lease shall be resumed. It is also agreed to make the repairs asked for by Mr. Sleeper as a necessity to protect the property shall be made by the estate of John A. Ten Eyck, deceased. St. Paul, Oct. 12th, 1893.

"[Signed]   John A. Ten Eyck, Executor.
"[Signed]   J. H. Sleeper."

It appears that, when this agreement was made, the defendant was insolvent, and was unable to pay the further rental of $500 per month, and therefore would not occupy the premises any longer. Before this time the plaintiff had learned the following facts, viz.: That the defendant's hotel business was running behind; that the volume of business in the locality of the hotel had decreased; that the hotel business in the city of St. Paul was greatly depressed; that the growth and development of the city of St. Paul and street-railway lines in other parts of the city had tended to draw away from the location of the Sherman House business and traffic, and the value of the hotel for such purpose had decreased; that the hotel is an old wooden building, and required a large expense for preserving the same, and keeping the same inviting and attractive for hotel or any business purpose; that defendant was unable to and could not carry out the terms of the original lease; that defendant was insolvent; and that the prospect of renting said hotel and building in case the same became vacant was a matter of uncertainty. With this knowledge, and believing that Sleeper would vacate the premises, he made the agreement so indorsed upon the lease, as being for the great interest and advantage of all the persons interested in the estate, and to save it and such persons from great damage and loss, by having said premises vacated, and the rent thereupon cease. While, by the terms of the original lease, the defendant was bound to make all proper repairs, and keep the premises in good condition, yet there are no terms in the lease requiring him to use the premises for hotel or other purposes. Upon these facts, the parties agreed upon a modification of the terms of the lease, so as to reduce the monthly rental to $350

per month, and that plaintiff would make certain repairs asked for by the defendant.

The sole question presented upon these facts is whether a contract fairly made by competent persons, with full and equal knowledge of all the facts, can be repudiated by one of the parties, who concedes that such contract was beneficial to him, and which the facts show to be so, and he can so repudiate the contract after it had been acted upon for a period of 16 months, and he has received such profits to the amount of nearly $6,000, and receipted therefor in full, upon the ground of want of consideration. It is quite evident that the parties mutually understood and agreed that, by reason of the insolvency of the defendant and the general depression of business, it was impossible for him to make the full rental payments of $500 per month. It was not mere willfulness or obstinacy on the part of the defendant in refusing to pay the rental or occupy the premises or make repairs, but a financial inability, brought about by the unforeseen depression in the business for which the premises were leased, and in which the defendant was engaged. It was upon the existence of the facts herein stated that the parties mutually executed the modification of the lease, which we have quoted.

The plaintiff contends that these facts show a voluntary promise on the part of the lessor to accept a sum less than the amount of the rent called for by the existing lease; that although the modified lease shows actual payment thereunder of the reduced amount, and continued occupation under the lease, still these facts constitute no bar to a recovery of the balance of the stipulated rent, upon the ground that there was no consideration for the modified contract, and that the parties remain just where they placed themselves by their original contract. In support of this view, he cites the case of Wharton v. Anderson, 28 Minn. 301, 9 N. W. 860. That was a case where the lessee, by the terms of the written lease, promised to pay rent for certain premises at the rate of $250 per month for five years, but, not paying promptly, the lessor reduced the rent to $208.33, and then to $150, per month, upon condition that such rent was paid punctually. This the lessee failed to do, and the lessor brought suit for the full rental of $250 per month, according to the terms of the original lease, upon the ground that the de-

fendant had failed to pay according to the terms of the modified lease. The plaintiff recovered, upon the ground that the alleged modification was a gratuitous parol promise. But the right to defend in this action against a recovery upon the terms of the original lease is claimed to rest upon the principle that the written modification is supported by the facts which show a valid consideration, and make it a binding contract, especially as it has been executed,—that is, performed from October, 1893, until February, 1895,—and nearly $6,000 paid pursuant to such modified contract. Certainly, the facts in the case of Wharton v. Anderson are not analogous to those at bar.

We may concede that mere inability on the part of defendant to pay rent would not alone constitute a consideration for a binding promise on the part of the lessor to accept a less amount than is provided by the terms of the original lease; but when the lessee, by reason of the great and unforeseen depression in the business in which he is engaged, and for which the premises are rented, becomes insolvent, and is likely so to continue for such season, whereby he would be compelled to vacate the premises, and cease doing business, and not keep them in repair or inviting and attracting to the public, and the premises thereby become greatly impaired in value, with great doubt as to whether the premises could be seasonably rented, we think that these facts show a sufficient consideration for a binding written agreement on the part of the lessor to accept a less rental sum than the amount provided in the original lease. In so doing, we are not trenching upon the doctrine that a promise by one party to a contract, to the other party, to prevent a breach of the contract, is without consideration.

"Consideration means something which is of some value in the eye of the law moving from the plaintiff. It may be some benefit to the plaintiff, or some detriment to the defendant."

Thomas v. Thomas, 2 Q. B. 851, 859.

In Copper v. Fretnoransky (Com. Pl.) 16 N. Y. Supp. 866, it is said that it is an elementary principle that a legal possibility of benefit to the contractor or detriment to the contractee is a sufficient consideration to support an agreement. That was a case of the renting by a written lease of certain premises for the term of one year, at a rental of $800 per annum, payable quarterly in advance. At the expiration of six months, the lessee was in the act of removing from

the premises, when the lessor said to him that, rather than have the premises idle, he would not charge him for one quarter's rent then unpaid, whereupon the lessee resumed his occupancy; and it was held that this agreement rested upon a valid and sufficient consideration. In the case of Jaffray v. Greenbaum, 64 Iowa, 492, 20 N. W. 775, the tenant was unable to pay the rent, which was reduced by the agreement of the parties. In the opinion, the court uses this language: [2]

"A lease which provides for too high a rent may be less valuable to the landlord than one providing for a proper rent, and especially if the tenant is a merchant, and can do business only by purchasing goods upon credit. The lease in question, with the rent reduced, was preferred by these landlords, as is shown by the fact that they made the reduction on purely business considerations. They desired that their tenants should continue in business under circumstances which should afford more assurance of success. The tenants made arrangements to continue, and did continue, and paid rent at the rate of $800 per quarter for several quarters."

This appears to be one of the elements which entered into the opinion of the court in holding that there was a sufficient consideration for the reduction of the rent. The case of Raymond v. Krauskopf, 87 Iowa, 602, 54 N. W. 432, was one where the plaintiff leased a farm to the defendant at a rental of 16 bushels of corn per acre; but severe storms injured the crops, and the tenant informed the landlord that there would not be enough corn raised to pay rent, and that he would not farm the land unless a new arrangement was made; that he proposed to surrender the land to the landlord, and obtain employment by the month; and thereupon the landlord told him to farm the land, and he would accept one-half the corn raised, in full of all demands; and the tenant replanted the land, and delivered more than half of the corn to the landlord, and it was held that this agreement rested upon a sufficient agreement, and was binding.

In the case at bar it is unquestionable that the tenant was insolvent and unable to continue the business. It is equally certain that he would vacate the building, and leave it idle or unoccupied, if the agreement for reduced rent and promise to repair had not been made. The terms of the lease do not require him to use it for hotel or other purposes. From the plaintiff's own testimony, it is apparent that the hotel could not be rented for the sum of $500 per month.

[2] At page 499.

It was therefore a benefit to the landlord that the hotel should continue to be occupied with the new rental to be paid as agreed upon by the parties, and that, to this end, the landlord should make the repairs which he did. The repairs were for the benefit of both parties. They aided in preserving the building and making it more useful. The reduction of the rent and making repairs induced the lessee to retain the occupancy and use of the building, and carry on the hotel business, which gave the landlord a rental therefrom; and, though at a reduced rate, yet the chances were that for some time he would not have received any rent if the premises had not been retained by the lessee. As we have already stated, these facts show that the modified agreement rested upon a valid and sufficient consideration.

Order affirmed.

MITCHELL, J. I think that the continued occupancy and use of the premises by the defendant for the hotel business, to which he was not bound under his lease, constituted, under the circumstances, a sufficient consideration for the agreement to reduce the rent, at least so far as it has been executed. I therefore concur in the foregoing opinion.

CANTY, J. So do I.