ADAMS RECREATION PALACE, INC v GRIFFITH

Ohio Appeals, 2nd Dist, Franklin Co

No 2781. Decided Dec 6, 1937

Connor & Nestor, Columbus, for plaintiff-appellee.

Hugh M. Bennett, Columbus, for defendant-appellant.

## OPINION

By GEIGER, J.

This cause is before this court upon appeal on questions of law and fact.

The record discloses the second amended petition, the amended answer, and the reply of the plaintiff.

There is much included in the pleadings that is not involved in the questions to be decided. However, it may conduce to clarify to briefly set out the pertinent allegations of the several pleadings.

It is alleged in the amended petition that on April 21, 1928, the Realty Company executed to plaintiff a lease for twenty years, commencing on August 15, 1928, and ending on August 14, 1948, for certain real estate situate in the City of Columbus; that the lease provided for payment of yearly rental of $10,000.00, in nine installments, during each and every year as follows: $1,111.11 on the 15th day of August of each year, and on the same day of each month thereafter of each year to and including the 15th day of March of each year, and $1,111.12 on the 15th day of April, the first installment to begin on the 15th day of August, 1928.

It is alleged that on November 16, 1934, the lease was modified in that the rent reserved was reduced to the sum of $7,200.00 for the year beginning August 15, 1934, and ending August 14, 1935, payable in nine equal monthly installments beginning September 15, 1934, and ending on May 15, 1935, being payable on the 15th day of each month between said months of September and May inclusive.

All the other conditions of said lease were to remain unchanged.

The lease further provided in substance that if the premises without fault of the lessee, shall be destroyed or so injured by fire as to be unfit for occupancy, the lessee may surrender possession, and thereupon the lease shall terminate, unless the damage is repaired within six months following the time that the damage occurs.

"Rent shall be abated during such period of time that said premises are unfit for occupancy due to any of said causes occurring without the fault or neglect of lessee."

Provision is made as to payment of heat costs which are not now in controversy.

Plaintiff alleges that it had invested in improvements and betterments $30,000.00, and that it had insured the same for $5,000.00 against loss by fire.

It is further alleged that a portion of the building so leased was totally destroyed by fire on May 16, 1935, without fault of plaintiff, and that the time within which the defendant was to restore the premises has expired, and that said lease is terminated.

Then follow certain allegations in reference to the fire insurance.

It is alleged that the defendant presented a claim against the plaintiff in the sum of $2,102.10, and claims that it is interested in the amount paid on the insurance policy to that extent.

On November 23, 1935, defendant was adjudged a bankrupt, and its claim against the plaintiff was listed at $2,102.10.

Plaintiff alleges that it is indebted to the trustee in bankruptcy only in the sum of $352.73, and no more.

It is alleged that the action of defendant and its trustee in refusing to accept the amount of $352.73, and in refusing to execute a release to the insurance company, has rendered it impossible for the plaintiff to collect its loss, and the plaintiff prays that the insurance company be required to interplead and deposit with the clerk an amount agreed upon by the defendant and the plaintiff for said fire loss, and that the defendant and the trustee be required to set up any claim they have, and that failing to accept the tender of $352.73, if on final hearing their claim is found to be without merit, the residue of the fund payable to plaintiff from the insurance company, may be ordered paid to plaintiff.

To this petition Paul A. Griffith, as trustee in bankruptcy, of the defendant Realty Company, filed an amended answer denying that the rent was reduced to $7,200.00, denying that it was payable in nine monthly installments, denying that the Realty Company claims it is interested in the amount to be paid on the insurance policy only to the extent of $2,102.10, and makes other denials, and avers that the plaintiff is indebted to the defendant in the sum of $4,902.10, as the balance due for rent and heating under the lease for the year ending August 14, 1935.

For amended cross-petition the defendant alleges that by the terms of the lease the plaintiff agreed to pay an annual rental to the Realty Company (now bankrupt) in the sum of $10,000.00, in nine installments, to be paid between the 15th day of August and the 15th day of April of each year; that

the plaintiff has failed to pay the rent for the year beginning August 15, 1934, except for partial payments, aggregating $5,650.00, and that there is due to the defendant the balance of the rent for the year ending August 15, 1934, in the sum of $4,350.00 and that the balance claimed is due for heating.

To this the plaintiff replies, denying the indebtedness in the sum claimed, and for further defense makes certain admissions as to the execution of the lease for a yearly sum of $10,000.00, but denies that the terms requiring the payment were in force for the year beginning August 15, 1934; and denies that the plaintiff was obligated to pay the defendant for the year beginning August 15, 1934, any sum in excess of $7,200.00; and sets up the modification of the lease executed as of November 16, 1934, whereby the rental reserved in the original lease was reduced to $7,200.00, upon which it had paid the sum of $5,650.00 and that by reason of the fire on May 16, 1935, the rent was thereafter abated and that in consequence the rental due has been fully paid.

The reply makes further allegations with reference to the destruction of the premises by fire.

The cause was tried before the judge of the Court of Common Pleas, "a jury being waived by agreement of the parties hereto."

## FINDINGS OF THE COURT ON QUESTIONS OF FACT AND LAW

The court made findings of fact separately from conclusions of law: (1) that the parties entered into a contract for a twenty year lease for payment of $10,000.00 per year, in nine installments; (2) that on November 16, 1934, they executed a written modification of the lease, reducing the rental to $7,200.00, payable in nine installments, from August 15, 1934, to and including April 15, 1935; (3) that prior to the execution of the modification there had been numerous conferences relative to a rent reduction, in which it was shown to the lessor that the lessee's business had so fallen that it was losing money, and it was in serious financial difficulty, and in fact insolvent, and that it could not pay the rental of $10,000.00 per year, and that unless there was a reduction lessee would be compelled to abandon the lease; (4) that equipment used in the operation of the business was mortgaged in an amount in excess of $35,000.00, which was in default, and the mortgagee was threatening to take the property unless payments were made, which could not be made, unless the rent was reduced; that by the terms of the lease the lessor reserved a lien on lessee's chattel property as security for the rent, which lien was inferior to the mortgage; that after the rent was reduced payment was made on the mortgage, and the value of the lessor's lien was thereby increased; (5) That business conditions had greatly reduced the rental value of the property; (6) that the lease provided that the rent should be abated during such period as the premises might be unfit for occupancy; that a fire occurred on May 16, 1935, rendering the property unfit, continuing to August 15, 1935; (7) that prior to May 16, 1935, lessee had paid on the rental for the year beginning August 15, 1934, the aggregate sum of $5,650.00, in separate payments made at various times, and in amounts differing from the monthly rental, and has paid into court $352.73; (8) that the lessee's portion of the expense for heating was $552.10, (this is agreed to by defendant); (9 and 10 of no importance); (11) that a trustee in bankruptcy was appointed; (12) that any balance remaining of the $2,500.00 on deposit in the court after the lessee has been paid in full, belongs to the plaintiff.

As conclusions of law upon the facts, the court found:

1. That the agreement of November 16, 1934, reducing the rental for the then current year to $7,200.00, was binding and valid.

2. That under the abatement clause of the lease, the rent was abated from May 16, 1935, to August 14, 1935, in a total of $1,760.00, leaving $5,440.00 payable on the rental to which was added $552.10 for heat, or a total of $5,992.10, to which the defendant is entitled, and that the plaintiff has paid directly the sum of $5,650.00, and the further sum of $352.73, a total of $6,002.10, a part of which was interest.

The court finds the issues in favor of the plaintiff, and that it is entitled to relief prayed for, and that it is not indebted to the trustee as claimed in the cross-petition, and that the defendant is not entitled to the relief sought, other than to have paid to him the sum of $352.73, previously tendered.

A motion for new trial is overruled, and certain disposition made of the funds in the hands of the court.

ASSIGNMENT OF ERRORS

The defendant trustee assigns twenty different errors of which he makes complaint.

In substance, the complaint is made that the findings of facts and conclusions of law, are contrary to law, and not sustained by the evidence, but are contrary to the manifest weight thereof; that the findings should have been in favor of the defendant; that the court erred in the exclusion and admission of evidence.

The 8th assignment complains that the court erred in finding that there existed a valid agreement reducing the rent for the fiscal year ending August 14, 1935.

Further assignments are to the effect that the court erred in failing to find that the agreement purporting to reduce the rent was without consideration and void.

The 11th assignment is to the effect that the court erred in its construction of the alleged agreement, in respect to the provision as to the abatement of rent in the event the premises were rendered unfit by reason of fire; that the court should have found that since all the rent of the fiscal year of the lease ending August 14, 1935, was due and payable prior to the date of the fire on May 16, 1935, under the terms of the lease and that the plaintiff was liable for the rent prayed for.

It is also complained that the court erred in re-opening the case and permitting the introduction of further testimony after the lapse of two weeks from the submission of the case.

The other errors assigned are either repetition of prior assignments, or relate to matters which we do not feel are of consequence.

THE EVIDENCE

We have carefully read the evidence as presented in the bill of exceptions. The case appears to have been treated by both parties as an appeal on questions of law, and we think properly so.

We have arrived at the conclusion that the court's findings of facts were justified by the evidence presented, leaving only now for our consideration certain assignments of error relating to procedural matters during the trial, and two questions as follows:

(1) Was the agreement to modify the lease fixing an annual rental of $7,200.00, instead of the $10,000.00, provided for by the original lease, a valid contract binding upon the parties?

(2) Both the lease and the modification thereof providing that the yearly rental should be paid in nine monthly installments, and the fire having occurred on May 16, 1935, the day after the expiration of the nine payment periods provided in the modification of the lease, was the lessee entitled to a rebate for the last three months of the annual period, or was it chargeable with the annual rental for the whole lease period?

EXAMINATION OF ERRORS COMPLAINED OF

The defendant has filed herein a very interesting and impressive brief, in which he has presented at length the authorities and arguments therefrom, which he claims sustain his position.

The original lease was executed by the parties on the 21st day of April, 1928. It set out the original terms and conditions and subsequent modifications thereof, as alleged in the petition are shown by the memoranda endorsed on the original. In addition to the modification set out in the pleadings, it appears that there was a prior modification executed on the 29th day of September, 1932, reducing the rent to $5,000.00, for the year beginning August 15, 1932, and ending August 14, 1933, and also reducing that for the year beginning August 15, 1933, and ending August 14, 1934, to the sum of $7,200.00, the same rental as reserved by the modification now in question. It may be pointed out that the original lease provided that the first of the nine monthly installments be paid on the 15th day of August, and the last on the 15th day of April, whereas, the day of payment in all the modifications, including the last one, was for nine equal installments beginning on the 15th day of September, and ending on the 15th day of May, thus making each of the nine payments payable at the end of each of the nine months, rather than in advance, as provided in the original lease.

ALLEGED ERRORS DURING TRIAL

We shall first address ourselves to the alleged errors upon the part of the court occurring during the trial, relating principally to the introduction and exclusion of evidence, and to the action of the court in re-opening the case after it had been submitted, for the introduction of further testimony, which it is urged by counsel for trustee, was evidence in chief which should have been introduced as such.

The cause being tried to the court after the jury had been waived, we are of the

opinion that the introduction of testimony which may have been incompetent is not prejudicial error.

The rule is well stated in the case of Bowman v Wright, 65 Neb. 661, (92 NW 580):

"Where a cause is tried to the court without the intervention of a jury, the general rule is that error can not be predicated upon the rulings of the court by which testimony is received, because it is presumed that the court considered only proper evidence. This rule always obtains where the record contains competent evidence upon every question necessary to sustain the findings of judgment."

Under this rule it is not necessary for us to determine whether or not the evidence complained of was incompetent. However, we are of the opinion that it was perfectly proper to introduce the testimony as it threw light upon the intent of the parties in relation to the lease and to its modification, although it related to a modification prior to that now under consideration.

As to the error complained of in re-opening the case for further testimony relating to a material fact that should have been presented in chief, we are of the opinion that the court did not err in this as it was the right and duty of the court to hear and consider all competent evidence bearing upon the issues between the parties.

What may be the rule as to re-opening the case where there is a jury, is not of weight where the jury is waived and the matter is submitted to the court.

## WAS THE PURPORTED MODIFICATION OF THE LEASE EFFECTIVE AS BETWEEN THE PARTIES

It is urged by counsel for the trustee that there is no consideration moving between the parties for reduction of the rent from $10,000.00 to $7,200.00.

It is not denied by counsel for plaintiff that a mere agreement by the lessor to accept a lesser rental than that provided in the lease, is without consideration and therefore not binding. Such an agreement must be supported by a valid and sufficient new and independent consideration.

It is not disputed that the payment of a part of an obligation is not regarded in law as a satisfaction of the whole, unless it was by virtue of an agreement supported by sufficient consideration. A promise to do that which the promissor is legally bound to do is an unreal consideration. But any consideration for the new or modified undertaking, however insignificant, satisfies the rule, and the test is whether there is an additional consideration adequate to support the contract consisting of something the debtor was not legally bound to do or give.

A very interesting discussion of this principle may be found in the early Ohio case of **Harper v Graham, 20 Ohio 106,** opinion by Ranney, J. This involved the validity of a contract by which a judgment debtor who was insolvent agreed to and did pay a sum less than the judgment. The court held that under the facts of the case the agreement was valid, and that the judgment for a greater amount than that paid should be cancelled.

It is true that the circumstances under which the money was paid gave rise to the conclusion of the court that there was a new and valid consideration, but what the court said in relation to the attempt of one entering into such an agreement to collect the original debt, is of interest, and some principles announced may be of value here.

It was pointed out that it was very early settled as a rule of common law that the payment of less than the sum due upon a liquidated demand although agreed to be received in full satisfaction, could not be insisted upon as such, because there was no valuable consideration to uphold the agreement to relinquish the balance, but that if the party to whom the money was coming executed a release under seal for the same debt, he was effectually barred, although he should have received nothing upon it.

The court states the rule and the reasons were purely technical and often fostered bad faith. The history of judicial decisions upon the subject has shown a constant effort to escape from its "absurdity and injustice."

He quotes with approval the case of Kellogg v Richard, 14 Wend. 116, the following:

"The rule that the payment of a less sum of money although agreed to be received in full satisfaction of a debt exceeding that amount, shall not be so considered in contemplation of law, is technical and not very well supported by reason.

Courts therefore have departed from it on slight distinctions."

Also quoting with approval—Brooks v White, 2 Met. 285:

"This rule which may obviously be urged in violation of good faith is not to be extended beyond its precise import; and whenever the technical reason for its application does not exist, the rule itself is not to be applied. Hence judges have been disposed to take out of its application all these cases where there was any new consideration, or any collateral benefit received by the payee which might raise a technical legal consideration, although it was quite apparent that such consideration was far less than the amount of the sum due."

Judge Ranney says:

"A moment's attention to the cases taken out of the rule, will show that there is nothing of principle left in the rule itself."

He points out many decisions in which slight variations from the original contract will furnish a consideration for its modification, and says:

"It may seem to some persons, not having a great veneration for those institutions of antiquity, for which no reason can be given, that a rule so effectually undermined, and having neither rhyme nor reason to support it, ought to be at once overruled and the whole matter placed upon the footing of reason and common sense."

Without deciding the general question, the court there holds that the case under investigation was one taken out of the rule for reasons which the court holds constitute a consideration.

In the case of R. R. Co. v Clark, 178 U. S. 353, 44 Law Ed. 1099, the Supreme Court laid down this principle:

"The rule that payment of a less sum in satisfaction of a larger sum is not binding for want of consideration only applies when the larger sum is liquidated, and when there is no consideration whatever for the surrender of a part of it, and the rule itself is considered so far with disfavor as to be confined strictly to cases within it."

Fuller, C.J., in his opinion, points out a number of cases sustaining the view that the rule is technical and not very well supported by reason, and the courts have departed from it upon slight distinctions.

Quoting a number of the cases cited by Judge Ranney in Harper v Graham, supra, C.J., Fuller, refers with approval to Hager v Thompson, 1 Black 80, 17 Law Ed. 41:

"Much the largest number of controversies between business men are ultimately settled by the parties themselves; and when there is no unfairness, and all the facts are equally known to both sides, an adjustment by them is final and conclusive."

It is conceded by counsel for the trustee that the adjustment of the rents made for the two preceding years, one to $5.000.00 and one to $7,200.00 are valid contracts by virtue of some slight modification in reference to the bond executed as a part of the original lease.

Were there no other new considerations, it might well be that under the rule laid down in Harper v Graham, the alteration of the original lease so that the rent was payable at the end of each month, instead of in advance, as provided by the original lease, would furnish a sufficient consideration. But there are other more valuable considerations evidenced by the testimony.

During the period of the depression the reduction of rent reserved in leases made during the high price period was a common occurrence, and many leases were modified on account of the depression, and the parties continued for the remainder of the term to pay and receive, without question or thought of repudiation, reduced rent, to the benefit of both parties.

This court is not disposed to endorse a rule by which such contracts made between business men, when both sides were facing a possible calamity, can be repudiated unless there is a very cogent reason therefor.

In the case at bar the evidence discloses that the lease was made during the high price period for a long term, but that as the "depression" began the parties entered into a mutual agreement by which for the period of two years preceding the modification now in question the rent was substantially reduced and was paid and accepted in full discharge of the obligation of the tenant to the landlord.

In the fall of 1934, when the prior modification terminated the parties again approached the question as to the amount of rent to be charged and paid for the twelve months from August 15, 1934, to August 14, 1935. Numerous conferences were held be-

tween the landlord and his representative and the representative of the tenant, in which the situation was canvassed and the tenant displayed to the landlord books showing loss during the prior years, and financial inability to pay the original rent of $10,000.00 a year. The tenant told the landlord frankly that it was insolvent, and that if compelled to pay the larger rental it would have to go out of business, and that the premises would be vacated and there was evidence introduced over the objection of the trustee, that in case of vacancy the property could not be rented for over $2,000.00 a year.

The parties were confronted with a situation that demanded their serious attention. On the one side the landlord was in danger of losing his tenant and having a vacant building, a very disastrous situation during the depression, as many landlords know from experience. On the other hand the tenant was in danger of having the mortgage upon its equipment foreclosed unless substantial payments were made upon it and was in danger of losing its business and the money that it had invested for the improvement of the property all of which would be to the detriment of the landlord and the tenant.

Facing this situation and evidently after a thorough consideration, as disclosed by the fact that the modification was not executed until November 16, 1934, three months after the beginning of the new rental term, the parties consummated their agreement and began to pay and accept rent under its terms.

Cases have been cited by counsel for trustee supporting his claim that such an agreement entered into between the landlord and tenant is without consideration, the most pertinent of which is Levine v Blumenthal, 186 Atl. 457, (N. J.) decided July 15, 1936, in which it is held:

"Tenant's inability to pay rental designated in lease because of trade depression held not sufficient consideration to support agreement reducing such rental."

"Payment and acceptance of rent designated in agrement, not supported by consideration, which modified lease, did not preclude landlord's recovery of unpaid balance of rent designated in lease."

This case is quoted largely in counsel's brief and in the opinion of the court.

See also: Seymour v Hughes, 105 N. Y. Supp. 249.

Supporting the other view may be cited Ten Eyck v Sleeper, 65 Minn. 413, (67 NW 1026), wherein it is held that a lease contract could be legally modified by the agreement of the parties to accept a reduced rental on account of the insolvency or the tenant and the hard times then existing, and that such was a valid agreement binding upon the landlord.

It is true that in this case it appears that insolvency was established, and that certain other facts existed, the court stating:

"In the case at bar it is unquestionable that the tenant was insolvent and unable to continue the business. It is equally certain that he would vacate the building and leave it idle or unoccupied, if the agreement for reduced rent and promise to repair had not been made."

In 64 Iowa 492, it is held that where the lessee had become embarrassed and the lessors believing that a failure would be detrimental to them, and with the view of assisting the lessee, endorsed upon the lease a reduction of the rent, there was a valid consideration for the reduction and the lessors were bound thereby.

The court states:

"In our opinion, a consideration was not wanting. We regard the case essentially the same as if the original lease had been surrendered, and a new lease substituted. * * * A lease which provides for too high a rent may be less valuable to the landlord than one providing for a proper rent, and especially, if the tenant is a merchant, and can do business only by purchasing goods upon credit. The lease in question, with the rent reduced, was preferred by these landlords, as is shown by the fact that they made the reduction on purely business considerations. They desired that their tenants should continue in business under circumstances which should afford more assurance of success."

It was held that this lease could not be avoided by the landlords.

It is held in Hastings v Lovejoy, 140 Mass. 261:

"In an action for rent reserved in a written lease the lessee may prove in defense, that after the delivery of the lease the lessor for a good consideration entered into an oral agreement that for the future the rent should be reduced."

See: Ossowski v Weisner, (Wis.) 77 NW 184; Lamb v Rathburn, 118 Mich. 666; Bowman v Wright, 65 Neb. 661; 92 NW 580.

In the case of Levine v Blumenthal, supra, relied upon by counsel for trustee, the following comment is made after the court stated that a debt may not be satisfied by a payment of less than the debt.

"The cases to the contrary either create arbitrary exceptions to the rule, or profess to find a consideration in the form of a new undertaking which in essence was not a tangible new obligation or a duty not imposed by the lease, or, in any event, was not the price 'bargained for as the exchange for the promise'."

"They exhibit the modern tendency, especially in the matter of rent reductions, to depart from the strictness of the basic common law rule and give effect to what has been termed a 'reasonable modification of the primary contract'."

We are not in accord with the court's statement that these cases are a departure from the common law rule. They are only an application of old principles such as are commented upon in **Harper v Graham, 20 Ohio 106**, decided in 1851.

Many cases may be found in which modification of contracts are permitted where the contract is still executory. We think these principles would apply to this case.

NO SHOWING OF INSOLVENCY

Counsel for trustee urges that the court was in error in its finding of facts, for the reason that there was no showing of the actual insolvency of the tenant, and further that the witnesses testifying for the tenant might, by reason of their interest, be prejudiced, and that the other witnesses were more worthy of belief.

We do not think it was of consequence whether the tenant was technically insolvent or whether he showed himself to be such—insolvency or failure in business was imminent, and it was not necessary, in order to make this an element of the consideration, that it should actually have occurred.

We do not believe that we can find the court was in error in his conclusions of law because certain witnesses may have been more interested than others.

We, therefore, arrive at the conclusion that the parties to the lease executed a valid contract, by which they mutually agreed to a modification of the terms of the lease for the year beginning August 15, 1934, and ending August 14, 1935, and that the rent reserved under that modification was $7,200.00 for the year, instead of $10,000.00 as originally written in the lease.

WHAT RENT WAS DUE AT THE TIME OF THE FIRE?

For purposes of brevity, we will regard the annual rental as $7,200.00, without consideration of the smaller amounts that altered it somewhat, considering the sum payable monthly at $600.00 if paid each month for 12 months and $800.00 monthly if to be paid in 9 months, instead of 12.

The first question is to determine when the rent was due. The lease was peculiar in that the annual rental of $7,200.00 was to be paid in nine monthly installments, the last of which was due and payable on the 15th day of May, 1935. The amount paid was $5,650.00, practically nine months at $600.00 per month, with some addition for heat.

Under the modification and under the custom between the parties, was the amount earned as rent at the end of the nine months $7,200.00, so as to leave at the date of the fire an earned but unpaid balance of $1,550.00, or was the amount required to be paid under the custom existing between the parties—$600.00 for each month, so as to leave the rent paid in full on the day preceding the fire, for the full elapsed portion of the term, but unearned and unpaid for the last three months, subsequent to the fire?

Counsel for the trustee claims that inasmuch as the rent was never paid for any given month, or in any regular amount, that the trustee may now apply the payments to such portion of the rental year as he may wish. (Rec. p. 83, et seq.) He points out that the installments due during the first three months were never received at either the rate of $800.00 or $1,111.11 per month and were never applied to the payments of the installments due in either of these months, the first payment being made November 23rd, and that this leaves the installments of rent due and payable for the first three months wholly unpaid, and that the payments made by the plaintiff were all applied toward payment of the rent for the months beginning November 15, 1934, and thereafter, with the result that the rental was all paid for the last nine months of the lease year ending August 14, 1935.

It may be again noted that the contract for reduction was not signed until Nov. 16th, a very good reason why no rental was paid until Nov. 23rd.

The trustee makes his estimate of the amount due as though the rental was $10,000.00 a year, instead of $7,200.00, as provided for by the modification. But the same argument will apply to the lesser annual payment which is in effect that the trustee has a right to apply the same as he may see fit, and that inasmuch as the total $5,650.00 paid during the rental year, paid for nine months at $600.00 per month, that he may apply some of the sum so paid to the last nine months of the term, so as to leave the rental for August, September, and October still unpaid, in the sum of approximately $1,550.00, even under the modification and a still larger sum under the rent originally reserved.

Counsel then seeks to apply the rule laid down in **Felix v Griffiths, 56 Oh St 39,** that rent paid in advance cannot be recovered back under the fire clause in this lease.

He advances the ingenious argument that by so applying the partial payments paid by the lessee in current months, he may produce the result that the months subsequent to the fire are paid in advance, while the months prior to the fire are not paid in full, and by the application of the rule in Felix v Griffith, as he interprets it, the rent for the months which succeeded the fire, thus paid in advance of rent actually earned by application of apportioned payments, cannot be recovered back, and that the trustee therefore, holds a just claim against plaintiff for an unpaid balance of rent, for the first three months of the lease year.

As opposed to this the plaintiff takes the position that over a long course of years it has been the custom of the lessee to pay the rent as he had available funds, and that the same were applied upon the current unpaid rent, and that if the funds so paid by it during the lease year were thus applied, that the rent to May 16, 1935, the day of the fire, was fully paid, and that the balance of the rent is abated under the fire clause of the lease.

Without further comment upon this matter, we are of the opinion that the custom of the parties had established the rule for the application of the money paid to the rent currently earned.

Counsel states that the lease itself contradicts this, when it provides that any failure of the lessor to enforce its rights upon any default of the lessee, shall not prejudice or affect the rights of revenues of the lessor, in the event of any subsequent default by the lessee.

We are of the opinion that such provision of the lease does not give to the lessor the right to apply this provision to an already existing condition.

While counsel has cited the case of Felix v Griffiths to support his view that he may now claim as paid and not recoverable the last three months rent, the case may well be considered in solving the other questions we have under consideration, namely, was the entire $7,200.00 earned at the expiration of nine months and at the time of the fire, or was only that portion of it earned which covered the elapsed time?

In the Felix case the lease was for a total **annual** rent of $1,500.00, payable $125.00 a **month,** in advance. In that case the rent was paid on the 9th day of January, and on the 13th day of January, the premises were destroyed, and the tenant sought to recover a payment of $112.00, covering that portion of the advanced payment that would apply to the portion of the rental month subsequent to the fire.

The court held that he could not do so. The court considered only the unearned portion of the current month, and no claim was asserted on the theory that because the lease called for $1,500.00 for the year that the whole amount was due, but it was conceded that only the amount due was the month for which payment was required in advance.

We are of the opinion that where a lease calls for an annual rental, payable monthly, that the amount payable is to be determined by the monthly payments and not by the annual payments, and the amount due is to be computed only on the monthly payments. This would apply where there are twelve monthly payments, but the question still remains whether when a lease provides for the payment of the annual rental in **nine** installments instead of **twelve,** as usual, and those nine dates for payment have past, the entire annual rent is due, or whether only nine months thereof is due.

We are of the opinion that the rental that becomes due is on the basis of monthly payments, one-twelfth of the annual payment, and not on the basis that the rent for the entire year is to be paid in nine months, so as to make each monthly payment one-ninth of the annual rental instead of one-twelfth.

The very fact that there is a provision in the lease for the abatement of the rent in the event of a destructive fire, is an indication that the parties had in contem-

plation that the rent was to be earned over the entire year, one-twelfth of which was to be earned in each month of the year.

If this were not so it is apparent that in the case at bar had the entire rent been paid at the end of the nine months, as provided in the modification, the abatement provision would have been of no value during the three months during which no rent was paid. This could not have been the contemplation of the parties and would not have been reasonable, and is not an interpretation which the court can give. Whatever a strict interpretation might require, a long observed custom had established the rule to govern.

We are of the opinion that all the rent earned until May 15th was paid, and that therefore there remains three months to which the parties would be entitled to use the premises had they not been destroyed by fire, on payment of rent as thereafter currently accruing, and that the fire clause abated this.

FIRE CLAUSE

This brings us to the interpretation of the fire clause.

Sec 8521, GC, provides:

"The lessee of a building which without fault or neglect on his part, is destroyed or so injured by the elements, or other cause, as to be unfit for occupancy, shall not be liable to pay rent to the lessor or owner thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant. The lessee thereupon must surrender possession of the premises so leased."

This is a re-codification of the original act passed March 30, 1868, 65 O. L. 35. There have been no other decisions interpreting it save that of Felix v Griffiths, supra.

The provision in the lease is not identical with the statute, so that the interpretation in that case is not controlling. The lease provides:

"Rent shall be abated during such period of time that said premises are unfit for occupancy due to any of said causes, occurring without any fault or neglect of the lessee."

It seems to us quite clear that the provision that rent shall be abated means what it says, that is the rent shall stop upon the occurrence of the fire. It does not mean as counsel urges that the rent, by a bookkeeper's figure, shall be considered as paid in full for the last three months of the lease, all subsequent to the fire.

We are of the opinion that the court was correct in his interpretation of this matter, and we hold that the court committed no error, either in the finding of facts or of law.

We are of the opinion that there was consideration for the modification of the lease, and that due to long custom the rental, although paid in irregular amounts and at irregular times, was to be applied to the current rental as paid, and that that which was paid at the rate provided in the modification discharged the obligation until May 15, 1936, and that the fire having occurred on the 16th day of May no further rent accrued, and it follows that all the rent has been paid and that the plaintiff is entitled to a distribution of the funds in the hands of the court, as ordered by the trial judge.

We wish to say that we have been much impressed with the clarity of the court's decision in this matter, and endorse it in full so far as it relates to the issues herein.

Judgment affirmed.

BARNES, PJ, and HORNBECK, J, concur.