SOUTHERN PACIFIC COMPANY v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 285. Argued November 19, 20, 1924.—Decided May 11, 1925.

1. Where a railroad, for transporting applicants for enlistment in the Army, discharged, retired and furloughed soldiers, and civilian employees of the War Department, rendered its bills at land-grant rates, knowing that according to a ruling of the Comptroller of the Treasury such persons were to be regarded as " troops of the United States " for whose transportation only land-grant rates could be paid by disbursing officers, and accepted payment of its bills on that basis without protest, *held* that, though the Comptroller's ruling was erroneous, the railroad was bound by acquiescence and could not recover the difference between the amount received and the larger amount which it would have been lawfully entitled to charge under its tariff.  P. 268.
2. But *aliter* where the bills, though rendered at land-grant rates, bore a short form of protest; "Amounts claimed in this bill accepted under protest "; or a form more extended and explanatory; since by these the government officers were sufficiently notified that payment at the lower rates would not be accepted in final settlement.  P. 268.
3. Where, however, the railroad rendered most of its bills with indorsed protests, but a considerable number during the same period without them, as to these latter it was bound by its acceptance of the land-grant rates.  P. 270.
59 Ct. Cls. 36, reversed.

APPEAL from a judgment of the Court of Claims rejecting the appellant's claim for the difference between

amounts paid by the Government for transportation at land-grant rates and the lawful tariff charges.

*Mr. William R. Harr*, with whom *Mr. Charles H. Bates* was on the briefs, for appellant.

*Mr. Merrill E. Otis*, Special Assistant to the Attorney General, with whom the *Solicitor General* was on the brief, for the United States.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The Southern Pacific Company, having carried certain persons as passengers at the request of the Government and received payment for such transportation at land-grant rates, brought this action to recover the difference between the rates thus paid and the full tariff rates. The Court of Claims, on its findings of fact, being of opinion that the claimant by its course of proceeding and acceptance of the land-grant rates was precluded from the recovery of the balance of the full tariff rates, entered judgment dismissing the petition. 59 Ct. Cls. 36.

The facts found, shortly stated, are as follows: The claimant in 1911 became a party to the so-called "land-grant equalization agreements" with the Quartermaster General, by which it agreed (subject to certain exceptions not here material) to transport troops of the United States at the net rates effective over land-grant lines, that is, at fifty per cent. of the rates charged private parties.[1] Thereafter, between March 1, 1912, and June 18, 1916,[2] the claimant transported, upon Government requests, a number of applicants for enlistment in the Army, discharged, retired and furloughed soldiers, and civilian employees in the War Department.

---

[1] See *United States* v. *Union Pacific Railroad*, 249 U. S. 354, note 1.

[2] The date on which the so-called "interterritorial military arrangement" became effective as to the claimant and the other railroads.

It had been previously ruled by the Comptroller of the Treasury that such persons were to be regarded as troops of the United States and that their transportation could be paid for only at land-grant rates; and disbursing officers, as the claimant knew, were authorized to make payments on that basis only. Because of this ruling the claimant presented its bills for all such transportation on the form of voucher prescribed for transportation at land-grant rates,[3] in which it stated in appropriate columns the "gross amount" of the regular fares, the "amount to be deducted on account of land-grant," and, in the final column, the "amount claimed" (the gross amount less the land-grant deduction); and certified the accounts to be correct. All these vouchers were presented to the Disbursing Quartermaster at San Francisco, and were paid by him in the amounts claimed; and all these payments were accepted by the claimant.

Prior to January 1, 1914, the claimant, except in one instance, accepted payment of these bills without protest or other objection.

After January 1, 1914, however, there was written, typewritten or stamped by the claimant upon a part of the land-grant vouchers, before they were paid, a so-called short form of protest, reading as follows: "Amounts claimed in this bill accepted under protest." This form of protest was understood by the clerk who handled these bills in the office of the Disbursing Quartermaster as being "addressed to the matter of land-grant rates," for the purpose of reserving the claimant's right to present a further claim for full commercial fares to the accounting officers or the courts. The claimant used this form of protest on 201 vouchers between January 1 and October 1, 1914;[4] but 303 of the vouchers presented and paid during this period bore no protest.

---

[3] See 14 Comp. Dec. 967.

[4] Also on one previous voucher.

On October 1, 1914, the claimant began " systemati-
cally " to endorse in typewriting on the land-grant
vouchers, before presentment, a so-called long form of
protest, reading as follows: "As U. S. Government ac-
counting officers claim they have no authority to allow
or pay for the transportation of discharged soldiers more
than the fares for troops of the U. S. such fares are shown
herein but under protest and S. P. Co. for itself and con-
necting carriers does not waive any of its rights to full
published tariff fares and any payment at any less amount
will be accepted as part payment only for the services
performed." This form of protest was used on 516 vouch-
ers between October 1, 1914, and June 18, 1916,[5] but 212
of the vouchers presented and paid within this period bore
no form of protest whatever.

The claimant brought the present action in March,
1918, shortly before the decision in *United States* v. *Union
Pacific Railroad*, 249 U. S. 354. In that case the railroad
company, a party to the land-grant equalization agree-
ment, having transported persons of all the classes that
are here in question except civilian employees, had pre-
sented to the Auditor for the War Department claims
for such transportation at the full tariff rates, and the
Auditor and Comptroller having successively refused to
allow these claims at more than the land-grant rates,
had then brought suit in the Court of Claims to recover
the full passenger fares. It was held by this court that
such persons were not troops of the United States within
the meaning of the land-grant acts and the equaliza-
tion agreements, and that the railroad company was en-
titled to recover the full amount claimed. In the pres-
ent case the Court of Claims held that in the light of
this decision none of the classes of persons here in ques-
tion could be regarded as troops of the United States,
and recognized that the claimant would have been en-

---

[5] Also on four previous vouchers.

titled originally to compensation at the full passenger rates. This is not questioned by the Government; the sole contention being that, as was further held by the Court of Claims, the action of the claimant in voluntarily presenting its bills at the land-grant rates and accepting payment thereof, precludes it from recovery of the balance of the full rates to which it would otherwise have been entitled.

The question when the substantive right to recover an amount justly due from the Government is lost through some act or omission upon the part of the claimant, was considered at length in *St. Louis, Brownsville & Mexico Railway* v. *United States, ante,* p. 169, in which the decisions bearing on this question were collated. It was there said that this right " can be lost only through some act or omission on the part of the claimant which, under the rules of the common law as applied by this Court to claims against the Government, discharges the cause of action. Acquiescence by the claimant in the payment by the Government of a smaller amount than is due will ordinarily effect the discharge. Acquiescence can be established by showing conduct before the payment which might have led the Government to believe that the amount allowed was all that was claimed, or that such amount, if paid, would be received in full satisfaction of the claim. Acquiescence can, also, be established by showing conduct after the payment which might have led the Government to believe that the amount actually received was accepted in full satisfaction of the original claim. But to constitute acquiescence within the meaning of this rule, something more than acceptance of the smaller sum without protest must be shown. There must mave been some conduct on the part of the creditor akin to abandonment or waiver or from which an estoppel may arise." The defense of acquiescence by the acceptance of a smaller sum than was actu-

ally due, it was further pointed out, is not to be con-
fused with the defense " of accord and satisfaction or
compromise of a disputed claim," evidenced by a re-
ceipt in full or a release.

Manifestly there was here " no accord and satisfac-
tion or compromise of a disputed claim." The claim-
ant, while presenting its bills for transportation at the
land-grant rates and accepting payment thereof, did not
execute either a receipt in full for its transportation
charges or a release thereof. The crucial question then
is whether the conduct of the claimant with reference
to the acceptance of the land-grant rates establishes an
acquiescence in the payment thereof, in the nature of an
abandonment or waiver, that operated as a discharge of
its claim for the full passenger rates. This is to be de-
termined by the application of the rules stated in *St.
Louis, Brownsville & Mexico Railway v. United States,
supra.*

1. It is clear that as to all the bills which were pre-
sented at land-grant rates prior to January 1, 1914, and
paid and accepted without protest or other objection, the
conduct of the claimant was such as to lead the Govern-
ment to believe that the land-grant rates were accepted
in full satisfaction of the original claims and established
an acquiescence on the part of the claimant that oper-
ated as a discharge of the claims for the full passenger
rates. *Oregon-Washington Railroad v. United States,* 255
U. S. 339, 347; *Western Pacific Railroad v. United States,*
255 U. S. 349, 355; *Louisville & Nashville Railroad v.
United States,* 258 U. S. 374, 375; *Louisville & Nash-
ville Railroad v. United States,* 267 U. S. 395; *St. Louis,
Brownsville & Mexico Railway v. United States, supra.*
This is not seriously questioned by the claimant.

2. The case is manifestly different as to those bills pre-
sented on the land-grant vouchers which bore either the
short or long form of " protest." While a " protest " has no

definite legal significance in connection with the receipt of money—being ordinarily used in connection with the involuntary payment of money under legal compulsion or duress—it may nevertheless be effective as an indication of non-acquiescence in the receipt of the amount paid as a final settlement of the claim.  In the present case it is clear that the use of these protests upon the vouchers was reasonably adapted to lead the Government officials to believe that the amounts of the vouchers were not all that was claimed and such amounts were not accepted in full satisfaction of the transportation claims. This was not only brought to the attention of the disbursing officer in the first instance, but later, in due course, to the attention of the accounting officers by whom the payment of the vouchers was approved.  The clerk in the office of the Disbursing Quartermaster who handled these bills understood that the short form of protest was addressed to the matter of land-grant rates, for the purpose of reserving the claimant's right to present a further claim for full commercial fares; and there is no suggestion that either the Disbursing Quartermaster or the accounting officers understood that the payment of the vouchers on which the protests were endorsed was received in full settlement of the transportation claims.

We find no essential difference in this respect between the short and long forms of protest.  The short form gave notice that the amounts claimed in the bills were "accepted under protest;" and the long form gave notice that by reason of the claim of the Government accounting officers the fares were shown at land-grant rates, under protest, without waiver of the claimant's right to full tariff fares, and that the payment of less than the full fares would be accepted "as part payment only for the services performed."  And the fact that a preliminary reference was made merely to the claim of the accounting officers as to discharged soldiers, did not destroy the effect

of the protest in its entirety as a notice that the land-grant rates were claimed and accepted in part payment only. .

We conclude that the endorsement of these protests on the vouchers sufficiently notified the government officers that the payment of the land-grant rates was not accepted in final settlement of transportation claims, and that, as to such vouchers, the Government has not established an acquiescence in the payment of the land-grant rates which discharges the claims for the remainder of the full tariff fares. And we are of opinion that the claimant was not compelled, at its peril, to present its claims originally for the full tariff rates, as was done in the *Union Pacific case*—which would have involved delay in the payment of any part of its claims—but that, having first presented its claim for the land-grant rates accompanied by notices showing that it did not accept such rates in final settlement, it was thereafter entitled to bring suit for the recovery of the remainder of the full tariff fares.

3. A different question arises, however, as to those bills which were presented on land-grant vouchers after January 1, 1914, upon which no protests were endorsed. It is perhaps true that the claimant, although presenting its bills on land-grant vouchers, might have sufficiently preserved its right to full compensation by a general notice, in advance, to the War Department that in so doing and in accepting payment on such vouchers at land-grant rates it did not intend to waive its claims to the full tariff rates and reserved the right to present subsequently its claims for the difference between the amounts paid and the full rates, and that in such case it would not have been essential to the claimant's right to full compensation that each specific bill should be accompanied by a notice showing its non-acquiescence therein as a final settlement. This, however, it did not do. It gave no such general

notice, but adopted for the preservation of its rights the method of endorsing its protests upon the separate vouchers.   Having adopted this method of procedure it was compelled to follow it in order to preserve its rights. Between January 1 and October 1, 1914, about three-fifths of the vouchers, and between October 1, 1914 and June 18, 1916, about two-sevenths, bore no protest. The number is too great to be presumptively explained on the theory of inadvertence and oversight. There is nothing in the findings of fact to indicate that this was the case, and no explanation whatever appears for the absence of the protests. Under these circumstances we think that as to all the bills presented on land-grant vouchers after January 1, 1914, which bore no protest whatever, the case is in the same situation as the bills which were presented prior to that date, without any protest; and that for the same reason it must be held that the presentation of these vouchers at the land-grant rates and the acceptance of payment thereof, established an acquiescence on the part of the claimant which discharged its claim for further compensation at the full tariff rates.

The judgment of the Court of Claims is accordingly reversed, and the cause remanded to that court for further proceedings in conformity to this opinion.

*Judgment reversed.*