WEINRICH, et al., Plaintiffs-Appellants, v. THE FRANKLIN SAVINGS & LOAN COMPANY, Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 1833. Decided April 23, 1945.

John Froug, Dayton, for plaintiffs-appellants.
Estabrook, Finn & McKee, Dayton, for defendant-appellee.

NICHOLS, J., of the Seventh Appellate District, sitting by designation.

466

## OPINION

By GEIGER, J.

This matter is before this Court on appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County. Plaintiff's second supplemental petition was filed February 7, 1941, and a number of answers were thereafter filed.

As an answer to the second supplemental petition the association admits many of its allegations, but denies certain other allegations and alleges that the plaintiff and all other creditors of the association, who were issued certificates of claim against the defendant association are entitled to receive interest only at the rate provided in the certificates of deposit issued to the claimants by the defendant and not uniformly at 6 per cent, and defendant denies that it has preferred any creditors.

The Court on August 28, 1944, made a formal entry that the cause was submitted to the Court upon the second supplemental petition and the defendant's answer and plaintiff's reply, the stipulations in the record, and the evidence; and on consideration the Court finds the issues against the plaintiff.

Notice of appeal was given and the case is in this Court for our consideration.

Counsel for plaintiff filed the following assignment of errors:

"FIRST: The finding and judgment of the trial court is against the manifest weight of the evidence and the law, and the judgment is contrary to the law and evidence.

"SECOND: That upon the evidence and the law the finding and judgment of the trial court should have been in favor of the plaintiff and against the defendant.

"THIRD: (Not important).

"FOURTH: For error of the trial court in overruling the demurrer of the plaintiff to the evidence of the defendant.

"FIFTH: For error of the trial court in overruling motion of plaintiff for judgment in favor of plaintiff at the close of all the evidence.

"SIXTH: For all other errors appearing on the face of the record."

This case has been exceptionally well argued on behalf of the plaintiffs and defendant, and while we shall adhere closely to the matters as presented by counsel, yet due to the importance of the case and to original research we have made, we may extend our opinion slightly to cover views not presented by counsel for either party.

## FACTS

It will be impossible to detail the facts relating to this case due to their extensive ramification, but we may summarize, confining ourselves to those facts which are undisputed.

The defendant was a building and loan association invested with all the duties and authorities prescribed by the statutes of Ohio relating to building and loan associations. On the 29th of September, 1933, the Superintendent of the Building and Loan Associations of Ohio, with the approval of the Director of Commerce, ordered the liquidation of the association under the provisions of §687-21 GC. In pursuance of the statute the board of directors filed an application in the Common Pleas Court of Montgomery County requiring all persons having claims against the association to file proof of claims and to present their claims for allowance. All creditors and depositors filed their proof of claims and they were approved and allowed in the liquidation proceeding and both the creditors and depositors received certificates of claim and surrendered their evidence of deposit. Certificates of claims amounting to approximately $1,700,000.00 were issued. During the course of administration the directors, with proper consent, paid to the holders of certificates, dividends totaling 35 per cent on the principal amount of the outstanding certificates up to and including the year 1936.

On the 8th day of September, 1936, upon application of the Superintendent of Insurance, the defendant association was permitted to resume business on a restricted basis and to file a plan of reorganization.

On August 27, 1940, this plaintiff filed his original petition, stating that he brought his action on his own behalf and on behalf of all creditors and claimants seeking the determination that the plaintiff and all holders of certificates of claim were entitled to receive interest on their several certificates of claim during the time of liquidation at the legal rate of 6 per cent. Plaintiff sought an accounting of the amount of interest due each claimant and for a restraining order against calculating interest at the contract rate and for judgment of the amount found due to each claimant. There was sufficient cash to pay all principal claims plus interest.

On the 28th day of September, 1940, after the unsuccessful efforts to affect the settlement with all holders of certificates, the board of directors passed a resolution ordering the payment of the final liquidating dividend of 65 per cent of the principal amount and ordered payment of interest on the outstanding certificates from the date of liquidation at the **contract rate,** that is, the rate of interest that was payable to depositors on the original evidence of deposit, varying from 4 per cent to 6 per cent. The board notified the Superintendent of its action and the Superintendent approved the same. On September 28, 1940, the Association notified all holders of claims by letter that payment of 65 per cent final liquidating dividend plus interest at the **contract rate** would be made and that interest would cease to accrue on the certificates of claim after October 1, 1940. Claimants in response to the letter called at the office of the association and in order to obtain their dividend check signed a receipt. Upon the back of the check there was an endorsement and a purported release and an agreement to accept the sum calculated at the **contract** rate of interest. This agreed settlement was not submitted to the Court for its confirmation.

Counsel for plaintiff in this case notified the defendant that the receipts and endorsements of the checks were not valid because of no consideration and requested that the form of receipt be changed, which was not done, and the plaintiff did not cash all the claims he had against the association, but retained several as set out in his petition. The defendant admitted that there were 283 persons who were certificate holders and whose claims were ordered paid as of October 1, 1940. All certificates of claim were of like tenor. All but a very few of the certificate holders accepted the payment of their full certificate with interest computed at the **contract rate** and cashed the checks given in payment thereof, which bore as part of their endorsement an agreement to accept the amount in full discharge of their claim against the association.

## THE LAW.

We shall state the claims as to the law made by the respective parties. The plaintiff claims that the two legal questions presented are, (1) What rate of interest is payable to holders of certificates of claim in a liquidated building and loan association? (2) Was the defendant association discharged and released from its liability to pay a legal rate of 6 per cent on certificates of claim by reason of any act done or committed by the creditors?

It is asserted by plaintiff that there can be no question on the legal proposition that holders of the certificates of claims in the liquidating of an insolvent association are entitled to interest at the legal rate of 6 per cent, and counsel point with considerable assurance to the holding of this Court in the case of Nathan Goldzwig v. Merion, Superintendent, in charge of liquidation of the American Loan and Savings Association, being case No. 1750 in this Court, which decision was rendered April 29, 1943. It is pointed out that in that case this Court unanimously held that the contracts of deposit were abrogated and rescinded under the statute and therefore that the contract rate of interest could not be the guide for the rate of interest due on certificates, and overruled the trial court in that case in its judgment that the contract rate was the rate of interest to be paid. Motion to certify the record in this case has been overruled in the Supreme Court. This Court in that case held that under the provisions of the statute any contract existing between a certificate holder and the association as to the rate of interest to be paid was rescinded by the statute when the association was taken over by the Superintendent of Insurance for the purpose of liquidation, and that upon such occurrence §8305 GC, providing for the rate of interest at 6 per cent thereafter controlled, and this Court held that the subsequent turnback to the association of the property formerly taken into the control of the Superintendent of Insurance did not reinstate any contract rate of interest existing prior to the original insolvency of the association; that such turnback was for the purpose of reorganizing the association or on failure to do that, that it was for the purpose of liquidation. This Court held that if the association has assets which will permit a payment of interest to the depositing creditors, such payment must be made not by virtue of the contract that is null and void because of the insolvency of the association as provided in §687-3 GC, but by virtue of a general statute, §8305 GC, providing for the payment of interest on claims at the rate of 6 per cent.

In the case of Goldzwig v Security Savings Association, No. 93176 Montgomery County Common Pleas Court, Judge Mills followed the law laid down by this Court in the above entitled case.

It is asserted by counsel for the plaintiff that the decision of this Court in the Goldzwig v Merion case lays down the principle controlling the case at bar, but that the trial court in the case at bar held that at the time the final

dividend of 65 per cent plus contract interest was ordered paid, the association was operating under the turnback provision of the statute and that the interest rate contracted for should be that originally established between the parties before the insolvency. The trial court took the view that upon the turnback of the association to its directors the rate of interest established by the contract, although the same had been abrogated by the intervening insolvency of the company, should be reinstated and be the contract under which or in pursuance of which the interest should be paid. This Court, however, has definitely held that the turnback to the directors for final dissolution of the corporation or its rehabilitation did not reestablish the contract rate but that if the contract rate because of insolvency became 6 per cent under the general statute, that it would remain such rate pending the windup of the corporation.

Counsel for plaintiff asserts that if the contracts were rescinded at the moment the association was ordered into liquidation on September 29, 1933, that the same could not be reinstated on October 1, 1940. With this position of counsel for plaintiff we are in accord.

In the case of **Warner v Mutual Building & Investment Co., 128 Oh St 37,** it is held in the second syllabus that,

"When a building and loan association becomes insolvent, it cannot perform its contract with its members and shareholders, and its contract with them is thereby rescinded, and on this theory a court of equity has jurisdiction * *."

While the case was discussed and decided upon the proposition as to whether the action against the company was a legal or equitable proceeding, the Court did determine as above stated without very detailed discussion of that point.

The next point discussed by counsel for plaintiff is the question as to whether the defendant association was discharged from its liability to pay 6 per cent interest on the certificates of claim, by reason of any act done or committed by the creditors. The trial court held that when the creditors executed a receipt and accepted a check requiring an endorsement in the nature of a receipt and release, such creditor thereby released any claim he might have to interest at other than the contract rate as set out in the certificates issued to him and endorsed on the checks given in payment thereof.

This Court had before it the case of **Weinrich v Permanent Building & Loan Association, 26 Abs 545,** rendering

a decision therein in 1937, and there held that the holder of a certificate at the time of liquidation was entitled to interest on this claim from the date of posting under the provisions of §8687-3. 26 Abs. 545. Hornbeck, J., concludes that,

"It follows that upon this claim he (the plaintiff) is entitled to interest by the specific terms of §637-2 GC, from the date of posting."

Counsel for plaintiff contend that the receipt and endorsement of the checks do not bar the right of creditors to recover the balance of interest, there being no consideration for the receipt or the endorsement of the check, if it be considered in the nature of a release; that there was no disputed or unliquidated claim involved. The certificate of claim was for a sum certain at the time the association was ordered into liquidation and the creditors filed their proof of claim and the claims were allowed, and counsel urge in support of this position the case just cited, opinion by Hornbeck, J., and further assert that the legal interest on the certificates was liquidated and undisputed and the defendant having failed to show any consideration for the acceptance of a lesser amount, there could be no discharge or release from the legal obligation to pay the lawful rate of interest, to-wit, 6 per cent; that it is axiomatic that the payment of a smaller sum will not discharge the larger sum due and owing unless the claim is unliquidated or disputed and that there is an agreement to release the balance.

Counsel cite the case of **Huo Chin Yin v Amino Products Co., 141 Oh St 21,** pointing to the conclusion of the Court in the first paragraph of the syllabus that,

"The acceptance of less than the amount presently, or past due upon a liquidated and undisputed indebtedness in full payment thereof is not an accord and satisfaction."

The above cited case is very interesting upon the question presented and is more interesting in consideration of the dissenting opinion of Hart, J. See comments by Hart, J., **141 Oh St 40.** We commend to a careful reading not only the opinion of the majority of the Court in this case, but also that of Judge Hart, **pp. 31—46,** and authorities there cited.

This Court had before it the case of **Adams Recreation Palace v Griffith, 26 Abs, 1,** in which it rendered decision on December 6, 1937, opinion by Geiger, J. The case related to

the question as to whether a landlord who had made a written lease to a tenant for a certain annual rental could collect the amount of that rental after he had agreed with the tenant to accept a less sum. The Court there followed the decisions of the Courts upon this question and held that an agreement by a lessor to accept a lesser rental than that provided in the lease is not binding **unless supported by a valid and sufficient new and independent consideration.**

A pertinent proposition is announced in the case of **Gholson, Appellee, v Savin, 137 Oh St 551,** wherein it is held in the 6th paragraph of the syllabus:

"While an executory agreement on the part of a creditor to accept in payment and full satisfaction of a liquidated claim a sum less than the amount of such claim, without any additional consideration to support such agreement, is ordinarily not enforcible at law, yet if such agreement has been executed and settlement made accordingly, or has been made with some benefit or advantage to the creditor, however slight, it will operate as a full discharge of the debt in accordance with the intention of the parties."

Judge Williams in his concurring opinion and Judge Hart in his dissenting opinion, **(141 Oh St)** comment upon the Gholson case. Judge Williams says:

**(p. 25):** "If the sixth paragraph in the Gholson case at first blush seems rather far-reaching when applied to a different factual situation, it should be remembered that a syllabus must always be read in the light of the facts presented."

Judge Hart comments (p. 32) to the effect that he apologizes for the length of his dissenting opinion on account of "confusion which I fear may result from the decision of the court in this case (Yin v Products Co.) in connection with the case of **Gholson v Savin, 137 Oh St 551,** decided by this Court only two years ago. * *"

In support of that part of the sixth syllabus in the Gholson case, "yet if such agreement has been executed and settlements made accordingly, * * it will operate as a full discharge of the debt in accordance with the intention of the parties", we find substantial authorities.

In 1 Corpus Juris Secundum, p. 528, Section 34, it is stated that it is an elementary rule in order to effect an accord and satisfaction that the thing offered must be accepted by the creditor as satisfaction of his claim and the payment of a part of a debt will not discharge the whole thereof without an acceptance of such partial payment as satisfaction.

"Such acceptance may be actual, by an express and affirmative agreement or consent to receive a partial payment in setlement of the whole debt or demand, or it may be constructive or implied in law, by the acceptance of a partial payment tendered on the condition that it be accepted in full settlement."

See further comment in the authorities cited.

In 17 Corpus Juris Secundum, p. 422, Section 71:

"If one makes an executory contract which lacks consideration he may avoid it when called on for performance, but if he executes the contract by performance he cannot undo his voluntary act."

See Rye v Phillips, 119 A. L. R., p. 1020, with annotations; also 34 A. L. R. 1035.

An interesting case decided by the United States Supreme Court is that of Southern Pacific Company v United States, 268 U. S. 263. In that case the Supreme Court holds that where a railroad has a just claim against the government for the transportation of soldiers or material and renders a bill against the government at "land grant" rates in lieu of full compensation to which the railroad was entitled, that although the comptroller's rule was erroneous the railroad was bound by acquiescence and could not recover the difference between the amount received and the larger amount which it was lawfully entitled to charge under the tariff.

In Debost v Auditor, 58 Pac. 72, relating to salary due to a public official under the law, but for which salary the official accepted a lesser payment, the Court holds that while paying officials may not reduce the salary below that established by statute or ordinance, yet if the official accepts the same, he may not recover the difference between the sum so accepted and the sum provided for by law.

The dissenting opinion of Judge Hart in the Yin case is so replete with sustaining citations that we can do nothing more than to say to those who may be interested that we

refer to that opinion and cases cited on page 42, et seq. Among other propositions on page 45 will be found,

"Where a tender of payment is made upon certain conditions, the creditor has no right to accept the tendered payment and disregard the conditions attached. If he exercises dominion over the thing offered or tendered he will be bound by the conditions."

The Gholson case and the Huo Chin Yin case both recognize the fact that there is a distinction between an executory contract and an executed contract.

There seems to be no question on the proposition that if a creditor agrees to accept a sum less than that conceded to be due to him, that such acceptance is not an accord and satisfaction and the creditor may proceed to collect the full balance of his claim, yet if in pursuance of the agreement there has been an executed contract, that the execution thereof meets the objection that there is no accord and satisfaction. Applying this to the case at bar, after the certificates had been issued and the letters sent to the certificate holders who agreed · to accept payment, such certificate holders could have refused to carry out the agreement upon the ground that there was no consideration. They would have had a right to so repudiate their contract. But after they accepted the money so offered to them there can be no rescission from it to the ground that there is no accord or satisfaction.

A very early case in Ohio is referred to at length in the Adams Recreation Palace case heretofore cited, the case being **Harper v Graham, 20 Ohio, 106,** by Ranney, J. It is an illuminating case and while following the rule that there. must be an accord and satisfaction, the Court points out that modern decisions have sought to avoid the absurdities of the principle, and have taken advantage of every opportunity to escape the consequence of the early decisions.

Courts have held that while a money payment of a less amount than that which is due is not an accord ·and satisfaction, yet if any other item than money is involved, that it supports the claim of accord and satisfaction. If a debtor gives a certain amount of money and adds to it a horse, hawk or robe, as originally recited by Lord Coke, there is an accord; or in these days, a carton of cigaretts, in addition to the cash, would be held to be an accord and satisfaction even though

the amount of money paid was far less than that which was due.

The statute requires the Superintendent of Insurance to publish the fact that the company has been taken over. This action was instituted by the plaintiff on August 27, 1940. We have already set out the facts recited in the second amended petition upon which the case was tried. The original case clearly stated so that all creditors could be informed of the claim of the plaintiffs, that it was asserted that after the insolvency of the company creditors or depositors were entitled to 6 per cent interest, and that the plaintiff brought his action on behalf of himself and all others similarly situated yet in spite of this knowledge, which coming home to the claimants, all of whom with the exception of the plaintiffs and possibly Mrs. Kate M. Dwyer, accepted payments of the principal of their claim, and interest at the contract rate. It may not, therefore, be said that they entered into this agreement which was carried out to completion by the acceptance of the amount tendered, in ignorance of the amount to which they may have been entitled had they not accepted interest at the contract rate.

The parties have filed briefs to which we have given attention and we further have given attention to the well considered opinions of the Court below.

Restating the matter in the fewest words possible, we find that the controversy involved the question as to whether or not the plaintiff in this case, acting on behalf of himself and others whom he claims are in like situation, may recover the difference between the contract rate of interest which was paid to and accepted by the claimants upon the offer made by the board of directors, and the rate of 6 per cent interest which is the legal rate in force after the association became insolvent. If the claim of the plaintiff is sustained, the sum of $70,000.00 will be taken from the stockholders and paid to the depositors who have already received the amount offered by the directors, thus changing their claim from an executory to an executed contract. The plaintiff has a very minor claim in amount and we can by no construction arrive at the conclusion that this minority claimant who has refused to accept the offer made by the directors may, by virtue of his alleged representative capacity, create a fund to the detriment of the stockholders to be paid to creditors who have already accepted the offer of the board of directors.

Inasmuch as we have arrived at our conclusion of excluding the depositors who agreed to and did accept the contract rate, we must concede that as to the plaintiff who

has not accepted the contract rate, but has continuously asserted his right to have his claim allowed at the rate of 6 per cent interest, he is entitled to the computation of his claims at the rate of 6 per cent for the period beginning with the insolvency of the corporation. The directors have tendered him the amount of his claims, computed at the contract rate and have paid the same into the Court and assert that therefore the plaintiff is not entitled to recover. With this claim of the board of directors we cannot agree. The claim of the plaintiff, excluding any class representation, may be computed at the rate of 6 per cent and this amount should be paid. We will not go over the figures, but they are of a very minor amount.

Due to the long lapse of time this small increase in the rate of interest may amount to a considerable sum, estimated in this case to be $70,000.00 for all the claims. We shall not assume the burden of computing the exact amount, but leave that to the actuaries of the company and the plaintiff. This applies equally to the claim of $6236.42 of Kate M. Dwyer, if she refused to accept the interest payment. If she accepted, it does not apply.

A matter that assumes paramount importance in this case is the correct solution as to whether Weinrich, who brings the action as creditor for himself and all other creditors of the corporation for their use and benefit, can represent creditors other than himself and possibly Mrs. Dwyer in a class suit under the provisions of §11257.

All other creditors save Weinrich and possibly Mrs. Dwyer have settled with the corporation by the receipt of dividends based upon a contract rate of interest and have given to the corporation full discharge from all further claims on behalf of their certificates of indebtedness. Weinrich never cashed such a certificate and always has maintained that he is entitled to 6 per cent interest in spite of the fact that his contract rate was less. If there were any other creditors than Weinrich who were in the same class with him in having refused to accept the payment tendered by the association, then they would be in the same class with Weinrich, but not numerous. In the case at bar the larger group of creditors, amounting to over 285, have constituted a class of their own by having accepted the checks tendered by the association. We have serious doubts as to whether Weinrich, being practically the only one who has not accepted the settlement, may constitute himself a plaintiff on behalf of all the others who have accepted the payment, by merely alleging a common interest. No common interest seems to us to

exist. The large group of creditors whom Weinrich claims are so numerous that it would justify a class suit, are separate and distinct in their claim from Weinrich, who seeks to become their representative in a class suit.

In accordance with the decision of this Court in **26 Abs. 547**, the plaintiff is clearly entitled to interest at 6 per cent, whereas all of the certificate holders who accepted the payments made by the defendant upon the condition imposed by it, constitute a different class.

We believe this question has been considered and decided in the case of **Stevens v Cincinnati Times Star Company, et al., 72 Oh St 112**, where the Court considers this matter on page 154, and embodies its conclusion in the last paragraph of the second syllabus. The Court pertinently states on page 154,

"The rule is uniform that, in order to maintain a suit by one for the benefit of himself and others, there must be community of interest as well as a right of recovery by reason of the same essential facts. **Armstrong v Treas., 10 Ohio, 235; Ohio v Ellis, same volume, 456; Trustees v Thomas, 51 Oh St, 285, 295; Duncan v Willis, same volume, 433.**"

Judgment of the Court below affirmed, except as to the amount claimed by the plaintiff who has constantly maintained his right to a 6 per cent rate, and possibly Mrs. Dwyer. Judgment accordingly.

NICHOLS, J., concurs.
HORNBECK, J., concurs in the judgment.

HORNBECK, J., concurs:
I concur in the judgment and am of opinion that the fourth defense of the answer has been established as against all persons whom plaintiff claims to have represented except himself and those who would not accept the checks issued by the defendant company.

Because of the judgment, it is immaterial whether or not this is a class suit. If the plaintiff could maintain his contention that all claimants whom he seeks to represent were entitled to 6% interest on their claims, and that the acceptance of the checks afforded no consideration for the releases in full satisfaction signed by them, then all such claimants would be in like status as that of the plaintiff and the suit would properly proceed as a class suit.

I do not agree that the claimants' acceptance of the checks being an executed contract afforded a consideration for the receipts, for the reason that we are precluded from properly so holding by **Yin v Amino Products Company, 141 Oh St 21.** I recognize the strength of Judge Geiger's opinion and the dissent of Judge Hart in the cited case and that many states take a different view than that which was reached by the majority in the cited case.

I believe that there was a consideration moving between the parties in the tender and acceptance of the checks and execution of the receipts therefor. At the time the checks were tendered there was manifest uncertainty as to the rights of the claimants to collect 6% interest instead of the rate specified in their certificates from the company. Nor had there been an adjudication on the subject. The checks were delivered under date of October 1, 1940, and the opinion of this Court in the Goldzwig case was not released until 1943 and, even then, the question there decided was not identical with the one presented here. This uncertainty on behalf of the claimants as to their right to collect a full 6% instead of their contract rate, would support their acceptance of a lesser sum and afford a consideration for the releases executed by them.

## ON APPLICATION FOR REHEARING

Decided May 17, 1945.

BY THE COURT.

This matter is presented to us on an application of plaintiff-appellants for rehearing. It has been before the Court for some time, and has received, both before the original opinion was issued and since the application for rehearing was filed, the earnest consideration of the Court.

Counsel in his application has presented his argument in a very attractive form, but we find nothing that leads us to a different opinion than that already arrived at and announced in our original decision. The entry may be drawn in harmony with our former opinion.

Application for rehearing denied.

HORNBECK, P. J., GEIGER and NICHOLS, JJ., concur.